Appeal: 16-7711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 2 of 55

FILED
JUN 06 2006
U.S. Court of Appeals
Fourth Circuit

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

✓ FILED 6/3/03 ENTERED
LODGED RECEIVED
JUN 2 2003
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

UNITED STATES OF AMERICA
Plaintiff

v.

NACOE RAY BROWN
Defendant

) Criminal Docket No. AMD 01-0377

Baltimore, Maryland
December 13, 2002
3:31 PM to 4:38 PM

The above-entitled matter came on for sentencing before The Honorable Andre M. Davis

**A P P E A R A N C E S**

On Behalf of the Plaintiff:
Jonathan P. Luna, Assistant U.S. Attorney
Jacabed Rodriguez-Coss, Assistant U.S. Attorney

On Behalf of the Defendant:
Kenneth W. Ravenell, Esquire

**ALSO PRESENT**
FBI Special Agent Anthony Campano

Volume 17

51

PROCEEDING OF DECEMBER 13, 2002

THE COURT: Good afternoon.

COUNSEL: Good afternoon, Your Honor.

MR. LUNA: Your Honor, I'm calling the case of United States of America v. Nacoe Ray Brown, Case Number AMD 01-0377. This matter has been set for a sentencing hearing. On behalf of the United States, Jacobed Rodriguez-Coss and Jonathan P. Luna.

THE COURT: Thank you, counsel.

Good afternoon, Mr. Ravenell.

MR. RAVENELL: Good afternoon, Your Honor.

THE COURT: I understand you have had a very busy week. As I'm sure you know, Judge Hannegan spoke to me this morning, and I was pleased to be able to cooperate with him. I assume you were able to conclude your business there, at least through closing arguments?

MR. RAVENELL: No, Your Honor.

THE COURT: You're going over to Monday anyway?

MR. RAVENELL: Yes.

THE COURT: Well, I understand how it is when there's ice and snow. The same thing happened here and will happen again.

In any event, you and your client have reviewed the presentence investigation report and you are ready to proceed?

MR. RAVENELL: Yes, Judge.

Appeal: 16-4711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 4 of 55

THE COURT: All right. I'll hear from the government first.

MR. LUNA: Yes, Your Honor. If I could just have one moment.

(Pause in the proceeding.)

MR. LUNA: Your Honor, I contacted your chambers this morning with respect to the change of schedule.

THE COURT: Yes. Let me say this about that. I was very concerned, and one of the reasons, of course, among many, was that despite appearances, it's not the easiest thing in the world to reschedule a sentencing in a case of this sort. When I say a case of this sort, of course, I mean, so often in federal court, in drug cases and in gun cases, you know, we don't have real victims in the sense of we don't have identifiable human beings who directly and adversely have felt the impact of the offense behavior. But it does happen in federal court, as it all too often happens in state court, that we do indeed have real people who are really harmed by offense behavior.

And so, while I appreciate Mr. Ravenell's attempts responsibly to seek a postponement or a rescheduling of the sentencing today when he came to realize earlier this week apparently that his ongoing criminal matter in Baltimore County was not going to conclude in a timely fashion, as he and I'm sure opposing counsel and Judge Hannegan in the Circuit Court

for Baltimore County anticipated, partly because of the bad weather we had earlier this week, the truth is I try, in these kinds of cases, to set a date that's firm partly out of respect for the schedules and needs of the victims in the case.

And so, that is why I was fairly firm in my desire to hold the 10:00 scheduling for this this morning. But, of course, as any judge would do, when another judge calls and says, I have what I think is a little problem that you can help me out with, then we have to try to make the entire system work as best we can.

So, Mr. Luna, I sincerely regret, because I'm sure that some of the people, or perhaps all of the people, that you had alerted me might want to come in and make statements, by your letter earlier this week, might be inconvenienced by the rescheduling of the sentencing from 10:00 this morning until later this afternoon.

I'm sure that you and Ms. Rodriguez-Coss clearly understand, and I hope that those of you with whom you have been working so diligently with in this case, who felt the direct impact of the matters that underlie this case, have an appreciation for the need of the Court to balance various issues and schedules. We try to hold firm, but sometimes we simply cannot.

I did arrange to have any person who wished to make a victim-impact statement to the Court to make -- obviously, a

 written statement is always welcome, but I also arranged to have videotapes made for any of those who wished to actually be able to speak their mind here in court, and I would be prepared to play the tape. I understand that that's not the best arrangement, and, frankly, I failed to advise your office, which I wish I had, and if the situation were to come up again, I certainly would, to advise the victims in this case that if they made a tape, the tape would be destroyed and would never fall into other hands or anything like that. But I understand no tapes were made.

So, I just wanted to say all of that before I allowed you to say what you wanted to say along those lines or any other lines, Mr. Luna.

MR. LUNA: Yes, Your Honor. I appreciate that.

I wanted to just knowledge that there are some victim witnesses in the courtroom today. There's a representative from the Patapsco Bank here today, and there are employees from the First Mariner Bank that are here. I have spoken to each of these witnesses, and they have indicated that they would not like to make a statement in open court.

I would like to pass on some thoughts that one of the witnesses, Ms. Gina Fike, passed on to me.

First, let me say that Virginia Kirby, who was an employee at the Mercantile Safe Deposit Bank wanted to be here, and she recently underwent some surgery. But she went out of

her way to make sure that she got a message to me to let me know that it was important for her to be here. She did not offer me a statement of any kind, but she wanted the Court to know that she really wanted to be here today.

With respect to the case, Your Honor, this was somewhat of a long case and I'm not going to review the facts of the case. I think it's pretty clear from the government's evidence and the witnesses that were called that this was a serious crime, a heinous crime, a very violent crime.

I do want to relate to you some thoughts that I got from Ms. Fike. It's sort of anecdotal. She gave me this example as, I guess, one example of many as to how the bank robbery affected her life and how it continues to affect her life. She told me about what I think the Court would agree is a very innocuous situation.

Ms. Fike entered a convenience store to make a purchase, and she observed a black male enter that establishment. The black male had some type of a coat or some garment over his hands and arms, and he stated, and Ms. Fike could hear, that he wanted to speak to the manager.

Ms. Fike was terrified at that moment, and she left the store. It later turned out that the black gentleman was simply inquiring of the manager whether or not there were employment opportunities there.

I think that that very everyday innocuous situation,

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 7 of 54
Appeal: 16-7711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 8 of 55

that something like that would have an effect upon a person as a result of being the victim of a crime such as this robbery, speaks volumes as to the victim impact of this crime.

I could share other thoughts with you from some of the other witnesses, but I will say that out of all the witnesses that Ms. Rodriguez-Coss and I and Agent Campano have spoken to during our interviews and meetings with them, they all share the common sentiment that this incident has forever changed their lives. They will always continue to go about their daily activities with some hesitation and just a little bit less confidence when confronting persons in certain situations. And I think the Court should take that into consideration.

If I may just have one moment.

(Pause in the proceeding.)

MR. LUNA: The case was perhaps sadly marked by religious overtones. I think it's fair to say that the defendant and Mr. Hilliard, the co-defendant, used either God and/or the word of God and religion as a means to manipulate people when, in fact, that manipulation wasn't so much for the praise of God, or any particular religion, but it was essentially to promote monetary benefit on their part. I think it's unfortunate that the trial took that sort of tone.

And I think the Court will remember at other proceedings the -- in Marty Clarke's escape case, I think the Court got a flavor as to the level of that manipulation.

The jury, of course, came back with guilty verdicts in three of the four counts. The government's position is that at sentencing, the Court should consider the evidence by a preponderance, and the government would insist that the full amount that was taken during these four robberies be included in the Court's consideration of any restitution order that the Court might order.

And, finally, Your Honor, in light of what I have said and in light of what the victims have advised me, the government is seeking a sentence at the very top of the guidelines.

Unless the Court has any specific questions for me, I will submit on that.

THE COURT: No. Thank you very much, Mr. Luna.

Mr. Ravenell, I'll be glad to hear from you, sir.

MR. RAVENELL: Thank you, Your Honor.

Your Honor, obviously, it's always difficult when we stand before the Court and a defendant has to be sentenced in any matter, but it's certainly difficult in a case such as this, when Mr. Brown faces such a significant period of incarceration in this case.

Mr. Luna commented, Your Honor, that the trial took a religious tone. What I don't want any of us to do is to get caught up in the issues of religion in this sentencing. He is correct that the trial had many issues regarding religion, but

Appeal: 16-4711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 10 of 55

I will tell the Court, as the Court is certainly aware because you were here, that certainly the jury has found Mr. Brown guilty of committing the crime, and certainly the government had to present their case at trial. Additionally, Mr. Brown certainly had a right to go to trial and to contest the government's evidence.

But, Your Honor, the evidence presented at the trial regarding the religious tone was not presented by the defense. It was presented by the government. I acknowledge that the government has to take the evidence they have and present it to the jury, but I don't feel that the issue of a religious tone that the case took should be held against the defendant who did not put on that evidence. But be that as it may, the government has to put on the case as they have it, and, if there's religious tone involved, certainly they have to present that to the jury if it's part of their case. And I don't fault them for presenting their case with the evidence that they had to present.

I am opposed to the issue of restitution being involved in the case, Your Honor, particularly where Mr. Brown has not been found guilty. The Court did give the government certainly the chance or options of how they wished to proceed with that particular count, and the government opted not to proceed further with the count, which I understand. But the jury did not find him guilty of that, and I am opposed to a

Appeal: 16-4711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 11 of 55

restitution being based on that count, Judge.

THE COURT: Under the -- I guess this question is really for Mr. Luna, Mr. Ravenell, and then I'll give you a chance to respond to it.

MR. RAVENELL: Sure.

THE COURT: Mr. Luna, under the circumstances of this case, we had a hung jury on Count 1, and the government wishes to have the Court charge the defendant with restitution on that count. Can you elaborate a little bit on that?

MR. LUNA: Ms. Rodriguez-Coss will address that.

THE COURT: Yes. Ms. Rodriguez-Coss.

MS. RODRIGUEZ-COSS: If I may, Your Honor. The government is basing its motion on sentencing guideline 1B1.2, which states that the Court may take into account all relevant conduct at the time of sentencing. I don't believe that the sentence of a criminal defendant is based entirely on the conduct upon which guilt --

THE COURT: There's no question about that. So far I think everything you have said everybody agrees with.

But how do you apply it in the context of --

MS. RODRIGUEZ-COSS: We --

THE COURT: Go ahead.

MS. RODRIGUEZ-COSS: We would submit to the Court that the standard of proof at the sentencing hearing is by a preponderance of the evidence. We would submit to the Court

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 12 of 55

that we can certainly meet and go beyond that standard with respect to this defendant's responsibility for the robbery of Key Bank and Trust on June 8th of last year. We presented the testimony of Mr. Kevin Hilliard, and --

THE COURT: I'm familiar with the facts, and I'll tell you straightaway, like you and Mr. Luna, I'm sure, and the Agent, in a certain sense, I was quite surprised that the jury was unable to reach a unanimous verdict on Count 1.

The obvious explanation, and, you know, sometimes what seems to be the obvious explanation is not the true or accurate explanation, but certainly the obvious explanation in the context of this case is that you had the videotapes or the images in the three counts where the jury found the defendant guilty. You didn't have that in Count 1. And one or more jurors apparently could not be persuaded by their fellow jurors that having an image was not critical to the government's proof of guilt beyond a reasonable doubt.

Okay. All of that being said, when you talk about relevant conduct, the -- I'm just trying to parse this out. How do you have relevant conduct to a count of theft?

MS. RODRIGUEZ-COSS: Robbery.

THE COURT: Well, I am using the more generic. Theft. Well, I don't want to denigrate it. It is robbery. You're absolutely right.

But, in other words, this is not a situation where a

defendant walks into a friendly poker game and robs all five players.

MS. RODRIGUEZ-COSS: Understood.

THE COURT: This is a situation where the evidence shows, just for simplification, in March there was a robbery; in April there was a robbery; in May there was a robbery; and in June there was a robbery. Actually, those were the facts of this case.

Now, if the jury is unable to reach a verdict on one of the robberies, how do you say, well, that's part of relevant conduct?

To what robbery is it relevant conduct?

You didn't charge conspiracy.

MS. RODRIGUEZ-COSS: We didn't argue --

THE COURT: I'm not suggesting -- that's not a criticism. Please, don't misunderstand me.

It's one thing to say it's relevant conduct to the conspiracy to commit robbery. But, here, we have Robbery Number 1, Robbery Number 2, Robbery Number 3, and Robbery Number 4.

Suppose, just for the sake of discussion, -- again, I'm trying to figure out where you draw the boundaries. But suppose there's seven bank robberies, and the jury convicts on one.

Well, I guess if the jury convicts on one, you'd retry

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 14 of 55

the hung counts. But you see where I'm going.

MS. RODRIGUEZ-COSS: I see where the Court is going.

THE COURT: Where does the Court say, okay, this separate discrete robbery somehow is relevant conduct?

Suppose you have five robberies and four of them are "teller jobs", as they say, and the average loss of each is $2,800, and then you have a fifth robbery, which is a vault robbery, and the defense is, well, surely the defendant didn't do that fifth robbery because, you know, he only does teller robberies.

So, now you've got this vault robbery, where the loss is $400,000, and you want to say, well, Judge, by a preponderance of the evidence, because he did the robberies in January, February, April, and May, which were all teller robberies, stick him with the $400,000 loss from the vault robbery that occurred in March that the jury hung on.

MS. RODRIGUEZ-COSS: That may be a question that would be posed to the Court in such a case.

THE COURT: How is this case different from that?

MS. RODRIGUEZ-COSS: What we're saying to the Court is in this case, the evidence was, if not overwhelming, pretty close to it.

THE COURT: See, that does not help you because you said, well, Judge, it's only a preponderance of the evidence, so it can't be a matter of the weight of the evidence.

MS. RODRIGUEZ-COSS: Well, I think it is. In this instance, it's not the jury that is called upon to consider the evidence, Your Honor. It's the Court. I think that is the difference and that is why --

THE COURT: But, see, that is not true. The jury was called upon to determine, as I instructed the jury in this case, whether the government proved beyond a reasonable doubt that Mr. Brown committed Robbery Number 1, Robbery Number 2, Robbery Number 3, and Robbery Number 4.

The jury wasn't asked to conclude beyond a reasonable doubt whether as a part of a conspiracy Mr. Brown and/or Mr. Hilliard committed any one or more of those robberies.

MS. RODRIGUEZ-COSS: Had we charged conspiracy in this case, I think the Court would agree with me that there would have been a guilty verdict on the conspiracy count.

THE COURT: I think there's a very good chance there would have been a guilty verdict.

MS. RODRIGUEZ-COSS: All right. And the application note to section 1B1.2, which governs relevant conduct, states clearly that any foreseeable act within a conspiracy is charged to the defendant. He is to, you know, be held accountable for that, even if the government didn't charge conspiracy in the case, even if he wasn't found guilty of conspiracy in the case.

We often see this situation in drug cases, Your Honor, where oftentimes a defendant is found guilty of conspiracy,

and --

THE COURT: But, see, in drug cases, you don't have restitution. We're not talking here about whether or not -- we are not talking about whether to charge the defendant with a sale made by a co-conspirator. That's not what we're talking about here.

MS. RODRIGUEZ-COSS: I would submit to the Court, Your Honor, that that is a far more serious penalty for a defendant than charging a defendant with restitution.

THE COURT: But we're not talking about how serious the penalty is. That is totally irrelevant.

MS. RODRIGUEZ-COSS: Well, --

THE COURT: No. It is irrelevant. The burden of proof is irrelevant because, as you well know, the burden of proof is preponderance.

So, the quantum of evidence is irrelevant to this question, and the severity is irrelevant to this question.

The question really is, frankly, kind of boring. But I'm spending this time because it's a legal question. So, whether it's boring or not, I think I'm entitled to have the government's best arguments, and I appreciate your giving them.

But this is not charging a defendant, for punishment purposes, in terms of the length of the sentence under Title 28, with a quantity of drugs.

This is a question of, how do you tie relevant

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 17 of 55

conduct -- I have the book in front of me, so if you want me to look at a specific application note or something, please direct my attention to it.

MS. RODRIGUEZ-COSS: Your Honor, we will respectfully refer the Court to --

MR. LUNA: Your Honor, I'm going to have to step out for --

THE COURT: I understand. You don't have to ask for dispensation, Mr. Luna. I understand your special situation.

MR. LUNA: Thank you, Your Honor.

THE COURT: This must have come up before. You didn't bring any case law with you, but maybe you glanced through the guidelines and saw a quick and easy answer and you are convinced.

MS. RODRIGUEZ-COSS: Well, Your Honor, for example, Application Note 3 on page 17 of the guideline book says -- I have the guideline book of November 1st of 2001, the red book.

THE COURT: Yes. I have the same one. Page 17?

MS. RODRIGUEZ-COSS: Page 17, Application Note Number 3.

THE COURT: Okay.

MS. RODRIGUEZ-COSS: It gives an example.

THE COURT: Let me take a look at that and also let Mr. Ravenell -- well, Mr. Ravenell doesn't have his book either.

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 18 of 55

MR. RAVENELL: I have the 2002 edition, Judge.

Did you say Application Note Number 3?

MS. RODRIGUEZ-COSS: Yes, Application Note Number 3.

MR. RAVENELL: It's not on page 17 anymore in this book.

THE COURT: No. She's talking about the Sentencing Commission's Guidelines Manual.

MR. RAVENELL: Yes, I have the manual.

THE COURT: That's not the Sentencing Commission's Guideline Manual, so that pagination is going to be different.

MR. RAVENELL: Right, it's going to be different.

(Pause in the proceeding.)

THE COURT: Now, see.

Don't you hate to hear that?

The sentence I'm looking at says:

> For example, if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, ...

Clearly, that's not what you're relying on.

MS. RODRIGUEZ-COSS: If the Court continues to read.

THE COURT: Okay.

> Subsection (d) provides that a conviction on a conspiracy count charging conspiracy to commit more than one offense is treated as if the

Appeal: 16-711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 19 of 55

> defendant had been convicted of a separate conspiracy count for each offense that he conspired to commit.

That's not what we have here, clearly.

MS. RODRIGUEZ-COSS: We don't have a conspiracy conviction here, Your Honor, but I --

THE COURT: We don't have a conspiracy count here.

MS. RODRIGUEZ-COSS: Right.

THE COURT: I mean, even if we had a conspiracy count, I think, frankly, I would find your argument -- and, by the way, let me be very clear, if I haven't been. You don't have to persuade me that it's just and appropriate to order Mr. Brown to make restitution as to all four banks. That's not the argument that you need to present.

The argument is, as I say, a much more really a boring argument, a technically-legal argument. How do you get me to relevant conduct in the absence of these conditionals that we find in Application Note 3?

Obviously, the probation officer doesn't see it your way because the probation officer didn't suggest that restitution should include the fourth robbery.

MS. RODRIGUEZ-COSS: Your Honor, section 1B1.3, subsection (a)(1)(B) says:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or

enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

is considered to be relevant conduct.

Now, let me perhaps provide the Court with another example. If we had a crime during which one of the co-conspirators had undertaken a murder, would a defendant in such a case, if such murder was foreseeable within the conspiracy, not be here confronting a level 43 under the guidelines?

THE COURT: God forbid that it should happen, but I think you've absolutely put your finger on it. I didn't want to go to that level. But, in fact, let's forget about restitution for a moment and imagine a scenario where a killing in the course of the open robbery -- that is, the robbery as to which the jury could not reach a unanimous verdict -- I suggest to you, Ms. Rodriguez-Coss, that the government would not come to sentencing on the other three robberies seeking to have the Court apply the homicide guideline to those three robberies

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 20 of 54
Appeal: 16-711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 21 of 55

Page 1673

under some --

MS. RODRIGUEZ-COSS: Your Honor, I --

THE COURT: No, you wouldn't. You would retry that count. You would absolutely retry that count. You wouldn't think of coming into court and -- well, you would certainly do it before making your decision as to whether or not to dismiss the count.

But you would not expect to have a court -- well, again, the distinction between robbery and drugs could not be more clear. You would not expect to have a court, I don't think you would, and I'm talking now about any U.S. Attorney's Office.

I don't think the Department of Justice is prepared to come into court and say, we charged the defendant not with conspiracy but with six discrete robberies, there was a murder in one of them, we don't charge conspiracy, and the jury hangs on the one count that includes the murder. I don't think the Department of Justice is going to come into court and say but, judge, consider the murder as relevant conduct to these other five robberies.

MS. RODRIGUEZ-COSS: Your Honor, that's precisely what Application Note 2(b) states.

THE COURT: 1B1.3?

MS. RODRIGUEZ-COSS: Yes. Application Note Number 2 on page 20. It illustrates the conduct in (a) and (b). In

Sharon Cook, Official Court Reporter, U.S. District Court

Appeal: 16-4711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 22 of 55

(b), it provides:

> Defendant C is the getaway driver in an armed bank robbery ...

THE COURT: Slow down.

MS. RODRIGUEZ-COSS: It talks about whether or not he is to be held accountable.

THE COURT: Where are you reading now?

MS. RODRIGUEZ-COSS: Let me refer you to the page, which is probably easier for the Court.

THE COURT: Go ahead.

MS. RODRIGUEZ-COSS: It's page 20, the example under letter (b).

THE COURT: How does that help you?

MS. RODRIGUEZ-COSS: Well, Your Honor, the Court was just saying that I wouldn't be here asking for a level 43 if it was murder. The fact is that the defendant is accountable for conduct in furtherance of the criminal scheme. This criminal scheme --

THE COURT: The scheme described on page 20 is a single bank robbery.

MS. RODRIGUEZ-COSS: Well, the scheme that is found on page 20 is a single bank robbery. My argument to the Court is that the scheme here was a series of bank robberies. Kevin Hilliard took the stand, accepted responsibility for the fourth bank robbery, and testified that this defendant participated in

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 22 of 54
Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 23 of 55

that bank robbery with him.

At the sentencing stage, I understand the Court is to take into consideration that relevant conduct by this defendant in so reaching whether or not he's liable to make restitution to that bank for that bank robbery.

THE COURT: Okay. Well, I think we've exhausted the possibilities.

Frankly, it occurs to me that the problem probably isn't one of relevant conduct at all, or most significantly. It's really a question of restitution. We probably ought to be looking at the restitution provision.

Do you want to avert to any of that?

That's probably where the answer lies.

(Pause in the proceeding.)

THE COURT: Referring to 2248, the -- well, that doesn't help.

And 2259 relates to sexual exploitation of children.

It's interesting, they have specific restitution provisions for all kinds of specific felonies.

Well, now, maybe there's something in 3663(A) that helps you, Ms. Rodriguez-Coss. This is 3663(A)(a)(1):

> Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c).

Clearly, bank robbery, I would think, would -- okay.

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 23 of 54
Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 24 of 55

See, as I leaf through this very quickly, this is the only definition of victim I could find. It's in 3663(A)(a)(2). It says:

> For the purposes of this section, the term victim means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including in the case of an offense that involves as an element a scheme, conspiracy or pattern of criminal activity.

So, under this section, as I read that very quickly, what is required for you to show is that the offense involves:

> ... as an element a scheme, conspiracy or pattern of criminal activity.

And, obviously, unarmed bank robbery does not involve any of those as elements.

Anyway, I recognize full well that, you know, taken too far, if the Court were to reject the government's arguments in these contexts, it could put the government in the position of having to retry the count. I understand that.

And I can easily imagine a situation where, because of the amount of the loss or for other reasons, the government just feels that if the Court is not willing to include a loss as relevant conduct, they simply cannot dismiss the count. I understand that.

But I don't think I'm persuaded that I can include in the restitutionary order in this case the amount of the loss from Count 1, which actually was the last bank robbery in this series.

So, Mr. Ravenell, I don't need to hear further from you unless you want to say something more on that subject.

MR. RAVENELL: Not on that subject, Your Honor, no.

THE COURT: All right. I interrupted you to go back to the government because I needed to do what we just went through in order to determine whether or not --

MR. RAVENELL: I understand.

THE COURT: Actually, I should make a finding because maybe the government wants to seek appellate review of this question. It might make sense for the government to do so, in fact

If I had the authority to do so, through an application of the guidelines, or the application of one or more of the sections I looked at in Title 18, I would indeed order restitution in this case. I think it's entirely appropriate. I think the jury's failure to reach a unanimous verdict of guilty on Count 1, in the face of its unanimous verdict as to Counts 2, 3, and 4 in this indictment, is something of an oddity.

I think the government's proof was more than ample. Much more than ample. Notwithstanding the lack of an image of

the actual bank robber, the government's proof was more than ample to establish in the mind of a reasonable juror, beyond a reasonable doubt, that Mr. Brown was involved in the bank robbery charged in Count 1.

So, I invite the government to seek judicial review because I'm making the specific finding and conclusion that the reason I'm not ordering restitution is because I don't have the power to do it. If I had the power to do it, I would order restitution.

Now, I say all that bearing in mind, of course, that any restitutionary order has to take into account the defendant's ability to pay, and the Court would have to make some findings in that regard, and I will.

But beyond that, I would definitely include the bank robbery charged in Count 1. The loss from that robbery I would include in my order of restitution in this case if the Court believed it had the power to do so.

Okay. I think the record is in as good a state as it could be in for appellate review of that issue.

Mr. Ravenell.

MR. RAVENELL: Thank you, Your Honor.

Your Honor, what I was going to indicate at the conclusion was -- there are a couple of things. One is that I certainly am aware, sitting here for several weeks, that Mr. Hilliard did testify in this matter. Ms. Rodriguez-Coss and I

believe also Mr. Luna commented that Mr. Hilliard certainly participated in all four of the alleged bank robberies. Certainly there were only three that Mr. Brown was convicted of. It appears certainly from the evidence presented that their actions were very similar and both were equally culpable, and I understand that Mr. Hilliard did choose to plead guilty and testify.

Your Honor is certainly aware from sentencing Mr. Hilliard that his sentence as reported to me, and I was not present, obviously, that part of his sentence was 50 months, a little over -- apparently four years and two months, which, if I understood correctly from speaking to other sources, there was a 13-level departure by the Court, or something of that nature. And certainly once the 5K1 recommendation was made by the government, the Court has authority to do as the Court did.

I would only ask the Court to take into consideration that while there was cooperation from Mr. Hilliard, that both individuals were culpable for the bank robberies in this matter, and whatever sentence the Court imposes under the guidelines will be a significant sentence for Mr. Brown.

The guidelines, as I understand it, call for a sentence of 262 months to 300 months at the top end, which, if my math is right, is about 21 years and 10 months at the low end and about 25 years at the top end. I would ask Your Honor, considering all of the facts in this matter, to impose a

sentence at the low end of the guidelines.

Your Honor, Mr. Brown and I have had discussions about this matter, and, as the Court is aware, he is probably taking an appeal in the matter. So, at this point, he does not wish to say anything, because of that, in fear that something may be said that could affect his appeal, or a new trial if he were to win on appeal.

THE COURT: Thank you, Mr. Ravenell.

Mr. Brown, notwithstanding what Mr. Ravenell just indicated, which I understand full well, do you understand that you have the right to address the Court, and the Court would be more than happy to hear whatever you have to say, if anything? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Well, I always try, sometimes really hard, to find something useful or hopeful or positive or inspirational even, to say to a defendant in a sentencing, Mr. Brown. But I must tell you that in those regards in this case, I am speechless. I am utterly speechless.

You, as is your right, which I fully respect, have elected to remain silent here at sentencing, and so really I have never heard from you at all. You have sat where you are now, across from me, and I have sat here, across from you, for several days of a motions hearing, several weeks of a trial, and the little bit I know about you from the presentence

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 28 of 54
Appeal: 16-4711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 29 of 55

Page 1681

investigation report and from Mr. Hilliard's testimony at trial, about his personal relationship with you, and --

MR. RAVENELL: Your Honor, if I may interrupt. Mr. Brown is telling me now that he does wish to say something.

THE COURT: Okay. Well, let me finish my thoughts, and then I'll give Mr. Brown a chance.

MR. RAVENELL: That's fine, Your Honor. I mean, I didn't know if you wanted to be heard last. That's why I interrupted.

THE COURT: Sure. One of the important things for me to say, in view of that, is that Mr. Brown should understand that his decision to remain silent or his decision to speak here at this sentencing cannot hurt him at all. In other words, his decision one way or the other cannot hurt him.

So, he shouldn't speak in -- when he gets a chance in a moment, he certainly should not speak in the expectation or hope or belief that by not speaking, he hurts his cause. He does not.

I really mean it when I say you don't have to speak. I respect your right not to speak. And it's important that you understand that speaking or not speaking is not a decision that's going to hurt you. Sometimes speaking can hurt a defendant because they can say "the wrong thing" or say something the wrong way, and there's a risk that the judge may take it the wrong way.

Sharon Cook, Official Court Reporter, U.S. District Court

But, frankly, you shouldn't speak out of some belief that oh, the Judge wants to hear me saying something.

MR. RAVENELL: And, Your Honor, that was my concern, that based on Your Honor's comments that you had not heard from him, when you made those comments, it was at that point when Mr. Brown indicated he wished to speak.

I just want the record to be clear that I don't want Mr. Brown to feel, as Your Honor is now telling him, that that's going to have an impact on the Court's sentencing, because I think it would be unfair to have that be the reason why he speaks.

THE COURT: Absolutely. I couldn't agree with you more, Mr. Ravenell.

What I was saying was, you know, spending all this time together in the courtroom, reading a little bit about his background, hearing a little bit about his background from Mr. Hilliard, and, most importantly of all, hearing about his actions and his behaviors from the witnesses at this trial, that is what the Court is focused on.

So, that's what the Court had in mind when the Court said, frankly, in this instance, while I think redemption is always possible, rehabilitation is not. I just don't see any rehabilitative potential in Mr. Brown whatsoever.

Now, he could stand up in a moment and give the Gettysburg Address, and he might be a good speaker, and he may

Appeal: 16-7711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 31 of 55

already be a good singer, he has been involved in the music industry, but I'd be terribly surprised if he could say something in just a few minutes, here in this courtroom on December 13, 2002, that is going to have much of an impact on this Court, in all candor.

This is a life that has been in unmitigated disaster. And I'm talking about Mr. Brown's life, given his early difficulties with the law, which are spelled out in the presentence investigation report, given the time he has spent in jail, and given the veneer of rehabilitation that he presented to the world through his involvement with Shekinah's Place as a young entrepreneur trying to make it in Baltimore. His true nature came out in his activities throughout the late winter and early spring of 2001. It's a sad commentary.

So, I believe a sentence at the high end of the guidelines range at a minimum is necessary to further the legitimate goals of sentencing, including protecting the community, exacting appropriate punishment for the defendant, and making a statement to people in the world that the community simply isn't going to put up with this kind of terrorizing of people just going about their everyday lives, doing their jobs, providing for their families, providing a service, doing what we all would want our children to do, to work hard and strive to get ahead.

So, Mr. Brown, it's entirely up to you. If you wish

to speak before the Court pronounces sentence, I still would love to hear from you, but I don't want you to speak because you think I want you to speak. So, it's your decision, sir.

THE DEFENDANT: This is against the wishes from my lawyer. I really wanted to speak, but he advised me not to because of appeal issues. I may say something to hurt me, and I may not, but I want to make it clear that there's a lot of things that came out in the trial that are true, and there's some things that are not. I think it's only fair to the court and to the prosecutor and to my family to at least set some of the record straight.

As you mentioned, at an early age, at 17, I was incarcerated. I was in high school.

I always had potential to -- my father, a pastor and a truck driver, was in the home but yet not present. We was always taught, all six kids, to believe in God, to trust in God.

At an early age, I was incarcerated, and I tried to take refuge in believing in God, just believing in the only thing I knew, which was God, from the time I guess I was in my mother's womb to this present time.

Having the potential to sing was the only gift that I had, that I discovered, and I took refuge in writing songs, and writing books, and plays, and so on.

I'm not saying this against the correctional system,

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 32 of 54
Appeal: 16-7711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 33 of 55

Page 1685

but they don't rehabilitate. I tried to do the best I could to rehabilitate myself with what I knew growing up. When I did come out, after the first time I had ever been incarcerated, the first time of ever being away from my family, a middle-class environment, snatched from my family at 17 to coming back into the world as a grown man and not being rehabilitated, just holding on to what little substance that I developed, I guess, I tried. I tried to go out and do what I knew to do.

I got married too soon, thinking that was going to help. Also, I was looking for that father figure and that father guidance, and I couldn't find it because everyone seemed to be in their own world. Like you said, everyone was working and trying to maintain their own little space and their own little progress.

I had an opportunity to have a record deal, and my parents just thought that it was wrong because it was in gospel music. I look at that as the turn of the entire grasp of what I had, just leaving and trying to please them. Instead of doing what they considered secular music, I did gospel, and it was hard to get in that field.

So, me and my wife decided that we was going to -- and, mind you, I had a perfect marriage. I met my wife one month and got married the next, looking for that somewhat stability. So, we learned from each other, and I'm still

Sharon Cook, Official Court Reporter, U.S. District Court

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 34 of 55

discovering myself, trying to still maintain a sense of sanity in all of this.

And, all of a sudden, we decided to come up with a concept called a dinner concert. She could cook pretty well, and I encouraged her to sharpen her abilities in recipes and different things. So, on weekends, we would get a small little place and rent it out, and I would --

THE COURT: Why don't you have a seat, Mr. Brown. Go ahead. I'm going to let you finish. Go ahead. Have a seat.

(The defendant complied.)

THE COURT: Speak into the microphone.

THE DEFENDANT: So, she would cook. And ultimately what happened was, you know, it was going pretty well, and I thought we could raise the money to try to get the music career off the ground. What happened next is that people started liking the idea, and we discovered a market for it. So, we decided to do the concert dinners at Shekinah's Place.

So, that's how Shekinah's Place came about. It was never a scheme. It was never the backdrop for criminal activity. Never, never. When I say this, I -- Your Honor already mentioned that he's going to give me top of the guidelines, and it doesn't matter what I say, that it isn't going to change that, and I believe that.

I want to say this just to set the record straight. I never, ever told Kevin Hilliard that God told us to rob banks.

Never. Never.

If I'm not saying this for any other reason, I'm saying this for the spiritual reason. I did wrong. I messed up. I honestly was trying to do something right, and I messed up. Every night, as God is my witness, I pray for healing for victims and healing for people I hurt because my intention was never for it to come to this.

That's really all I wanted to say.

I apologize to the Court, I apologize to the prosecutor, and I apologize to even the Marshals. When I got into the situation, I was scared. All I was thinking about was running, just getting away. I was embarrassing my family again, and was actually trying to just get away. But I was running from myself, and I was running from my failures.

I can honestly say that in the nine months that I have been locked behind the door, I have wrestled with myself, and I have came to the conclusion that this is no one's fault, not Kevin Hilliard's and not Tiffany Carter's, it's no one's fault but mine for not doing what I believe was a spiritual answer as well as a way out for me to honestly turn my life over and do the correct thing.

I honestly can say, once again, that I missed a major part in my life because -- also, not for Your Honor to consider but just for Your Honor to know, I was molested at 11 years old, and I had a child at 12 by my cousin, and that changed me

Appeal: 16-7711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 36 of 55

a great deal as well.

I seem to run into people who say to me, this is what I can get out of you, but when they don't get what they're looking for, they say that I am the one that caused the pain or I am the one that brought this about. I'm saying that in light of Kevin Hilliard, his motive for approaching me and his motive for us to come together was not all as pure as he made it seem. But, once again, he has his time, and God bless him.

I just wanted to make the record clear concerning myself.

THE COURT: All right, Mr. Brown. Thank you.

You've got a lot of issues to deal with. A lot of issues. Yes, you've had some trauma in your life. Who hasn't? We all have. But you have a lot of issues to deal with. You are in some serious denial. I'm no psychiatrist, but you have a lot of issues to deal with. And I hope you deal with them. I hope you deal with them because one day you will come home.

It's the judgment of the Court that the defendant be sentenced as follows:

The Court adopts the presentence investigation report in full.

The defendant is sentenced concurrently as to each count, Counts 2, 3, and 4, to 300 months incarceration to the custody of the Bureau of Prisons.

Supervised release effective upon his release from

Appeal: 16-7111 Doc: 9 SEALED Filed: 03/17/2016 Pg: 37 of 55

custody, five years concurrently as to each count.

The Court recommends that he be placed in a treatment program relating to mental health as a condition of supervised release and such drug screening and treatment as he may require during the period of supervised release.

The Court orders restitution in the total amount of $378,666, broken down in accordance with the probation officer's calculation of the loss to each of Patapsco Bank, Mercantile Safe Deposit and Trust Company, and First Mariner Bank.

Again, for the reasons earlier expressed, the Court is not ordering restitution as to the bank identified in Count 1 because it concludes it does not have the authority to do so. If it had the authority, it would so order.

A special assessment of --

MR. RAVENELL: Your Honor, on the restitution issue, I just want to bring to the Court's attention the -- this is my fault. When we talked about the restitution issue, we didn't deal with one aspect, which is that $63,850 was actually recovered.

THE COURT: Right. I'm treating that as entirely attributable to Count 1. So, the total amount of restitution is, as I say, $378,666.

The special assessment of $300, which is $100 per count, is to be paid immediately. The restitution is to be

Appeal: 16-7111 Doc: 9 SEALED Filed: 03/17/2016 Pg: 38 of 55

paid in minimum monthly amounts of $1,500 a month or such other amount as the probation officer may permit with the approval of the Court.

In making this restitution order, the Court finds that there is very good reason to believe that the defendant is capable of making significant restitution payments because a very significant portion of the proceeds of these robberies has not been recovered.

The Court finds that it is very likely that the defendant, or someone acting on his behalf or at his behest, has access to the bank-robbery proceeds or property properly traceable to the bank-robbery proceeds.

So, the Court really has little hesitation, if any, in concluding that the defendant is today and will be upon his release from custody in a position to arrange for the payment of significant restitution as a result of the government's inability to locate the vast bulk of the robbery proceeds.

The Court will recommend to the Bureau of Prisons that the Bureau house the defendant as close to the Baltimore metropolitan area as possible for the purpose of facilitating visitation with his family and his children.

Mr. Luna.

MR. LUNA: Your Honor, the government would like to move to dismiss the indictment in Criminal Number AMD 01-0535. That's the case of United States v. Nacoe Ray Brown, the case

Appeal: 16-7711 Doc: 9 SEALED Filed: 03/17/2016 Pg: 39 of 55

that was assigned to Martin Clarke of the United States Attorney's Office.

THE COURT: The motion is granted.

MR. LUNA: I have prepared an order of dismissal.

THE COURT: Very well.

Is the government prepared at this time to make an election as to Count 1 of the indictment?

MR. LUNA: We will dismiss it at this time.

THE COURT: Count 1 is dismissed.

You may approach the clerk.

(Mr. Luna complied.)

MR. LUNA: Thank you, Your Honor.

THE COURT: Thank you, Mr. Luna.

MR. RAVENELL: Your Honor, will that sentence date from the date of his arrest, July 26th?

THE COURT: Yes. The defendant is entitled to credit for time spent in custody from the date of his arrest.

Mr. Brown, you have the right to an appeal in this case. Your notice of appeal must be filed in writing within ten days of today. I'm certain that Mr. Ravenell will see to that for you.

If you cannot afford to hire Mr. Ravenell or some other attorney to represent you for purposes of appeal, then upon your submission of an appropriate affidavit of indigency showing that you are financially incapable of hiring a lawyer,

Appeal: 16-711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 40 of 55

then the Court will appoint an attorney -- not this court, but the appellate court will appoint an attorney to represent you on the appeal if you cannot afford it. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And, again, Mr. Ravenell will see to the filing of a notice of appeal, whether or not he's going to represent you on appeal. That's between you and him, of course.

Thank you again, counsel.

COUNSEL: Thank you, Your Honor.

THE COURT: The court stands adjourned.

(The proceeding was then concluded.)

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 40 of 54
Appeal: 16-7711 Doc: 9 SEALED Filed: 05/17/2016 Pg: 41 of 55

**INDEX**
**Sentencing**
**Volume 16 of 16**
**December 13, 2002**

| | Page Numbers |
|---|---|
| COMMENCEMENT OF PROCEEDING | 1655 |
| COLLOQUY | 1655 -- 1658 |
| MR. LUNA | 1658 -- 1661 |
| MR. RAVENELL | 1661 -- 1663 |
| MS. RODRIGUEZ-COSS | 1663 -- 1675 |
| THE COURT | 1675 -- 1678 |
| MR. RAVENELL | 1678 -- 1680 |
| THE DEFENDANT | 1680 |
| THE COURT | 1680 -- 1684 |
| THE DEFENDANT | 1684 -- 1688 |
| THE COURT | 1688 -- 1692 |
| CONCLUSION OF PROCEEDING | 1692 |

## C E R T I F I C A T I O N

I, Sharon Cook, hereby certify that I was the Official Court Reporter present during the foregoing proceeding and that this verbatim transcript is true and accurate. The proceeding was taken by me in machine shorthand, and this verbatim transcript was subsequently prepared by me utilizing the XSCRIBE Computer-Aided Transcription system.

Sharon Cook
Official Court Reporter
7522 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

Telephone No.: (410) 837-2343

**Look-See Concordance Report**

- - -

UNIQUE WORDS: **1,137**
TOTAL OCCURRENCES: **3,012**
NOISE WORDS: **385**
TOTAL WORDS IN FILE: **8,453**

- - -

SINGLE FILE CONCORDANCE

- - -

CASE SENSITIVE

- - -

NOISE WORD LIST(S): **NOISE.NOI**

- - -

INCLUDES ALL TEXT OCCURRENCES

- - -

DATES **ON**

- - -

INCLUDES PURE NUMBERS

- - -

POSSESSIVE FORMS **ON**

- - -

MAXIMUM TRACKED OCCURRENCE THRESHOLD: **50**

- - -

NUMBER OF WORDS SURPASSING OCCURRENCE THRESHOLD: **2**

- - -

LIST OF THRESHOLD WORDS:

- - -

**COURT** [64]
**Court** [63]

**– DATES –**

**April** [2] *1665:6; 1666:14*
**DECEMBER 13, 2002** [1] *1655:1*
**December 13, 2002** [1] *1683:4*
**February** [1] *1666:14*
**January** [1] *1666:14*
**July 26th** [1] *1691:15*
**June** [1] *1665:7*
**June 8th** [1] *1664:3*
**March** [2] *1665:5; 1666:16*
**May** [2] *1665:6; 1666:14*
**November 1st** [1] *1669:17*

**– $ –**

**$1,500** [1] *1690:1*
**$100** [1] *1689:24*
**$2,800** [1] *1666:7*
**$300** [1] *1689:24*
**$378,666** [2] *1689:7, 23*
**$400,000** [2] *1666:12, 15*
**$63,850** [1] *1689:19*

**– 0 –**

**01-0377** [1] *1655:5*
**01-0535** [1] *1690:24*

**– 1 –**

**1** [15] *1663:7; 1664:8, 14; 1665:19; 1667:8; 1671:23; 1675:21; 1677:3, 21; 1678:4, 15; 1689:12, 22; 1691:7, 9*
**10** [1] *1679:23*
**10:00** [2] *1657:6, 15*
**11** [1] *1687:24*
**12** [1] *1687:25*
**13** [2] *1655:1; 1683:4*
**13-level** [1] *1679:13*
**17** [6] *1669:16, 18, 19; 1670:4; 1684:12; 1685:5*
**18** [1] *1677:18*
**1B1.2** [2] *1663:13; 1667:19*
**1B1.3** [2] *1671:22; 1673:23*
**1st** [1] *1669:17*

**– 2 –**

**2** [7] *1665:19; 1667:8; 1673:22, 24; 1676:2; 1677:22; 1688:23*
**20** [4] *1673:25; 1674:11, 19, 22*
**2001** [2] *1669:17; 1683:14*
**2002** [3] *1655:1; 1670:1; 1683:4*
**21** [1] *1679:23*
**2248** [1] *1675:15*
**2259** [1] *1675:17*
**25** [1] *1679:24*
**262** [1] *1679:22*
**26th** [1] *1691:15*
**28** [1] *1668:24*

**– 3 –**

**3** [9] *1665:19; 1667:9; 1669:16, 20; 1670:2, 3; 1671:18; 1677:22; 1688:23*
**300** [2] *1679:22; 1688:23*
**3663** [3] *1675:20, 21; 1676:2*

**– 4 –**

**4** [4] *1665:20; 1667:9; 1677:22; 1688:23*
**43** [2] *1672:15; 1674:15*

**– 5 –**

**50** [1] *1679:10*
**5K1** [1] *1679:14*

**– 8 –**

**8th** [1] *1664:3*

**– A –**

**abilities** [1] *1686:5*
**ability** [1] *1678:12*
**able** [3] *1655:14, 15; 1658:3*
**absence** [1] *1671:17*
**Absolutely** [1] *1682:12*
**absolutely** [3] *1664:24; 1672:18; 1673:4*
**accepted** [1] *1674:24*
**access** [1] *1690:11*
**accordance** [1] *1689:7*
**account** [2] *1663:14; 1678:11*
**accountable** [3] *1667:21; 1674:6, 16*
**accurate** [1] *1664:10*
**acknowledge** [1] *1662:9*
**act** [1] *1667:20*
**acting** [1] *1690:10*
**actions** [2] *1679:5; 1682:18*
**activities** [2] *1660:10; 1683:13*
**activity** [5] *1671:25; 1672:5; 1676:10, 14; 1686:20*
**acts** [1] *1672:3*
**actual** [1] *1678:1*
**additional** [1] *1670:19*
**Additionally** [1] *1662:4*
**Address** [1] *1682:25*
**address** [2]

1663:10; 1680:11
**adjourned** [1] 1692:12
**admits** [1] 1670:18
**adopts** [1] 1688:20
**adversely** [1] 1656:15
**advise** [2] 1658:5, 7
**advised** [2] 1661:9; 1684:5
**affect** [2] 1659:13; 1680:6
**affected** [1] 1659:13
**affidavit** [1] 1691:24
**afford** [2] 1691:22; 1692:3
**afternoon** [5] 1655:2, 3, 10, 11; 1657:16
**age** [2] 1684:12, 18
**Agent** [2] 1660:6; 1664:7
**agree** [3] 1659:14; 1667:14; 1682:12
**agreement** [1] 1670:18
**agrees** [1] 1663:19
**alerted** [1] 1657:13
**alleged** [1] 1679:2
**allowed** [1] 1658:11
**AMD** [2] 1655:5; 1690:24
**America** [1] 1655:5
**amount** [6] 1661:5; 1676:22; 1677:2; 1689:6, 22; 1690:2
**amounts** [1] 1690:1
**ample** [3] 1677:24, 25; 1678:2
**anecdotal** [1] 1659:11
**answer** [3] 1669:13; 1675:13; 1687:19
**anticipated** [1] 1657:1
**anymore** [1] 1670:4
**Anyway** [1] 1676:17
**anyway** [1] 1655:18
**apologize** [3] 1687:9, 10
**apparently** [3] 1656:23; 1664:15; 1679:11
**appeal** [10] 1680:4, 6, 7; 1684:6; 1691:18, 19, 23; 1692:3, 7, 8
**appearances** [1] 1656:10
**appears** [1] 1679:4
**appellate** [3] 1677:13; 1678:19; 1692:2
**Application** [7] 1669:16, 19; 1670:2, 3; 1671:18; 1673:22, 24
**application** [4] 1667:18; 1669:2; 1677:17
**apply** [2] 1663:20; 1672:25
**appoint** [2] 1692:1, 2
**appreciate** [3] 1656:20; 1658:14; 1668:21
**appreciation** [1] 1657:21
**approach** [1] 1691:10
**approaching** [1] 1688:6
**appropriate** [4] 1671:12; 1677:20; 1683:18; 1691:24
**approval** [1] 1690:2
**April** [2] 1665:6; 1666:14
**area** [1] 1690:20
**argue** [1] 1665:14
**argument** [6] 1671:10, 14, 15, 16; 1674:22
**arguments** [3] 1655:16; 1668:21; 1676:18
**armed** [1] 1674:2
**arms** [1] 1659:19
**arrange** [2] 1657:24; 1690:15
**arranged** [1] 1658:1
**arrangement** [1] 1658:5
**arrest** [2] 1691:15, 17
**asking** [1] 1674:15
**aspect** [1] 1689:19
**assessment** [2] 1689:15, 24
**assigned** [1] 1691:1
**assume** [1] 1655:15
**attempting** [1] 1672:8
**attempts** [1] 1656:20
**attention** [2] 1669:3; 1689:17
**attorney** [3] 1691:23; 1692:1, 2
**Attorney's** [2] 1673:11; 1691:2
**attributable** [1] 1689:22
**authority** [4] 1677:16; 1679:15; 1689:13, 14
**average** [1] 1666:6
**avert** [1] 1675:12
**avoid** [1] 1672:8
**aware** [4] 1662:1; 1678:24; 1679:8; 1680:3

– B –

**backdrop** [1] 1686:19
**background** [2] 1682:16
**balance** [1] 1657:21
**Baltimore** [4] 1656:23; 1657:1; 1683:12; 1690:19
**Bank** [6] 1658:17, 18, 24; 1664:3; 1689:8, 10
**bank** [19] 1659:12; 1665:23; 1674:3, 20, 22, 23, 25; 1675:1, 5, 25; 1676:15; 1677:3; 1678:1, 3, 14; 1679:2, 18; 1689:12
**bank-robbery** [2] 1690:11, 12
**banks** [2] 1671:13; 1686:25
**based** [3] 1663:1, 16; 1682:4
**basing** [1] 1663:13
**bearing** [1] 1678:10
**behalf** [2] 1655:6; 1690:10
**behavior** [2] 1656:16, 19
**behaviors** [1] 1682:18
**behest** [1] 1690:10
**behind** [1] 1687:16
**beings** [1] 1656:15
**belief** [2] 1681:17; 1682:1
**believe** [7] 1663:15; 1679:1; 1683:15; 1684:16; 1686:23; 1687:19; 1690:5
**believed** [1] 1678:17
**believing** [2] 1684:19
**benefit** [1] 1660:21
**bit** [5] 1660:10; 1663:9; 1680:25; 1682:15, 16
**black** [3] 1659:17, 18, 22
**bless** [1] 1688:8
**book** [6] 1669:1, 16, 17, 24; 1670:5
**books** [1]

1684:24
**boring** [3]
1668:18, 20; 1671:15
**boundaries** [1]
1665:22
**broken** [1]
1689:7
**Brown** [25]
1655:5; 1661:20; 1662:2, 4, 20; 1667:8, 11; 1671:13; 1678:3; 1679:3, 20; 1680:2, 9, 18; 1681:4, 6, 11; 1682:6, 8, 23; 1683:25; 1686:8; 1688:11; 1690:25; 1691:18
**Brown's** [1]
1683:7
**bulk** [1]
1690:17
**burden** [2]
1668:13, 14
**Bureau** [3]
1688:24; 1690:18, 19
**business** [1]
1655:15
**busy** [1]
1655:12

– C –

**calculation** [1]
1689:8
**call** [1]
1679:21
**calling** [1]
1655:4
**calls** [1]
1657:7
**Campano** [1]
1660:6
**candor** [1]
1683:5
**capable** [1]
1690:6
**career** [1]
1686:14
**Carter's** [1]
1687:18
**Case** [1]
1655:5
**case** [41]
1655:4; 1656:11, 12; 1657:4, 19, 20; 1658:7; 1659:5, 6, 7; 1660:15, 24; 1661:19, 21; 1662:4, 12, 14, 16, 17, 20; 1663:7; 1664:12; 1665:8; 1666:18, 19, 21; 1667:7, 14, 23; 1669:12; 1671:24; 1672:14; 1676:8; 1677:2, 19; 1678:16; 1680:18; 1690:25; 1691:19
**cases** [5]
1656:13; 1657:3; 1667:24; 1668:2
**caught** [1]
1661:24
**caused** [1]
1688:4
**chambers** [1]
1656:6
**chance** [5]
1662:22; 1663:4; 1667:16; 1681:6, 15
**change** [2]
1656:7; 1686:23
**changed** [2]
1660:8; 1687:25
**charge** [5]
1663:8; 1665:13; 1667:22; 1668:4; 1673:16
**charged** [6]
1667:13, 20; 1672:2; 1673:14; 1678:4, 15
**charging** [3]
1668:9, 22; 1670:24
**child** [1]
1687:25
**children** [3]
1675:17; 1683:23; 1690:21
**choose** [1]
1679:6
**Circuit** [1]
1656:25
**circumstances** [1]
1663:6
**Clarke** [1]
1691:1
**Clarke's** [1]
1660:24
**clear** [6]
1659:7; 1671:11; 1673:10; 1682:7; 1684:7; 1688:9
**clerk** [1]
1691:10
**client** [1]
1655:23
**closing** [1]
1655:16
**co-conspirator** [1]
1668:5
**co-conspirators** [1]
1672:13
**co-defendant** [1]
1660:17
**coat** [1]
1659:18
**coming** [2]
1673:5; 1685:6
**commentary** [1]
1683:14
**commented** [2]
1661:22; 1679:1
**comments** [2]
1682:4, 5
**commission** [2]
1672:6; 1676:6
**Commission's** [2]
1670:7, 9
**commit** [3]
1665:18; 1670:24; 1671:3
**committed** [3]
1667:8, 12; 1670:18
**committing** [1]
1662:3
**common** [1]
1660:8
**community** [2]
1683:18, 20
**Company** [1]
1689:9
**complied** [2]
1686:10; 1691:11
**concept** [1]
1686:4
**concern** [1]
1682:3
**concerned** [1]
1656:9
**concerning** [1]
1688:9
**concert** [3]
1672:2; 1686:4, 17
**conclude** [3]
1655:15; 1656:24; 1667:10
**concluded** [1]
1692:13
**concludes** [1]
1689:13
**concluding** [1]
1690:14
**conclusion** [3]
1678:6, 23; 1687:17
**concurrently** [2]
1688:22; 1689:1
**condition** [1]
1689:3
**conditionals** [1]
1671:17
**conduct** [18]
1663:15, 17; 1664:19, 20; 1665:11, 12, 17; 1666:4; 1667:19; 1669:1; 1671:17; 1672:10; 1673:19, 25; 1674:17; 1675:3, 9; 1676:24
**confidence** [1]
1660:11
**confronting** [2]
1660:11; 1672:15
**consider** [4]
1661:3; 1667:2; 1673:19; 1687:23
**consideration** [4]
1660:12; 1661:6; 1675:3; 1679:16
**considered** [2]
1672:10; 1685:20
**considering** [1]
1679:25
**conspiracy** [21]
1665:13, 18; 1667:11, 13, 15, 20, 22, 23, 25; 1670:24; 1671:2, 5, 7, 9; 1672:3, 15; 1673:15, 16; 1676:9, 13
**conspired** [1]
1671:3
**contacted** [1]
1656:6
**contest** [1]
1662:5
**context** [2]
1663:20; 1664:12
**contexts** [1]
1676:19
**continue** [1]
1660:9
**continues** [2]
1659:13; 1670:21
**convenience** [1]
1659:16
**convicted** [4]
1670:16; 1671:1; 1675:23; 1679:3
**conviction** [3]
1670:23; 1671:6; 1672:7
**convicts** [2]

1665:23, 25
**convinced** [1]
1669:14
**cook** [2]
1686:4, 12
**cooperate** [1]
1655:14
**cooperation** [1]
1679:17
**correctional** [1]
1684:25
**correctly** [1]
1679:12
**COUNSEL** [2]
1655:3; 1692:11
**counsel** [3]
1655:9; 1656:25;
1692:10
**Count** [11]
1663:7; 1664:8, 14;
1677:3, 21; 1678:4,
15; 1689:12, 22;
1691:7, 9
**count** [20]
1662:23, 24; 1663:1,
9; 1664:20; 1667:15;
1670:17, 24; 1671:2,
7, 9; 1673:4, 7, 17;
1676:20, 24;
1688:23; 1689:1, 25
**Counts** [2]
1677:22; 1688:23
**counts** [3]
1661:2; 1664:13;
1666:1
**County** [2]
1656:23; 1657:1
**couple** [1]
1678:23
**course** [8]
1656:9, 12; 1657:7;
1661:1; 1672:8, 21;
1678:10; 1692:9
**court** [14]
1656:13, 17; 1658:3,
20; 1673:5, 8, 10, 14,
18; 1684:9; 1692:1,
2, 12
**Court's** [3]
1661:6; 1682:9;
1689:17
**courtroom** [3]
1658:16; 1682:15;
1683:3
**cousin** [1]
1687:25
**credit** [1]
1691:16

**crime** [7]
1659:9; 1660:2, 3;
1662:3; 1672:12
**Criminal** [1]
1690:24
**criminal** [10]
1656:23; 1663:16;
1671:24, 25; 1672:5;
1674:17; 1676:10,
14; 1686:19
**critical** [1]
1664:16
**criticism** [1]
1665:16
**culpable** [2]
1679:6, 18
**custody** [4]
1688:24; 1689:1;
1690:15; 1691:17

– D –

**daily** [1]
1660:9
**date** [4]
1657:3; 1691:14, 15,
17
**day** [1]
1688:17
**days** [2]
1680:24; 1691:20
**deal** [8]
1685:16; 1688:1, 12,
14, 16, 17; 1689:19
**DECEMBER** [1]
1655:1
**December** [1]
1683:4
**decided** [3]
1685:22; 1686:3, 17
**decision** [6]
1673:6; 1681:12, 14,
21; 1684:3
**DEFENDANT** [4]
1680:14; 1684:4;
1686:12; 1692:5
**Defendant** [1]
1674:2
**defendant** [34]
1660:17; 1661:18;
1662:12; 1663:8, 16;
1664:13; 1665:1;
1666:8; 1667:21, 25;
1668:4, 8, 9, 22;
1670:16; 1671:1;
1672:1, 13; 1673:14;
1674:16, 25; 1675:3,
23; 1680:17;
1681:23; 1683:18;

1686:10; 1688:18,
22; 1690:5, 10, 14,
19; 1691:16
**defendant's** [2]
1664:2; 1678:12
**defense** [2]
1662:8; 1666:8
**definitely** [1]
1678:14
**definition** [1]
1676:2
**denial** [1]
1688:15
**denigrate** [1]
1664:23
**Department** [2]
1673:13, 18
**departure** [1]
1679:13
**Deposit** [2]
1658:24; 1689:9
**described** [2]
1674:19; 1675:24
**desire** [1]
1657:5
**despite** [1]
1656:10
**destroyed** [1]
1658:8
**detection** [1]
1672:8
**determine** [2]
1667:6; 1677:10
**developed** [1]
1685:8
**difference** [1]
1667:4
**difficult** [2]
1661:17, 19
**difficulties** [1]
1683:8
**diligently** [1]
1657:19
**dinner** [1]
1686:4
**dinners** [1]
1686:17
**direct** [2]
1657:20; 1669:2
**disaster** [1]
1683:6
**discovered** [2]
1684:23; 1686:16
**discovering** [1]
1686:1
**discrete** [2]
1666:4; 1673:15
**discussion** [1]

1665:21
**discussions** [1]
1680:2
**dismiss** [4]
1673:6; 1676:24;
1690:24; 1691:8
**dismissal** [1]
1691:4
**dismissed** [1]
1691:9
**dispensation** [1]
1669:9
**distinction** [1]
1673:9
**doesn't** [4]
1669:24; 1671:19;
1675:16; 1686:22
**door** [1]
1687:16
**doubt** [4]
1664:17; 1667:7, 11;
1678:3
**draw** [1]
1665:22
**driver** [2]
1674:2; 1684:15
**drug** [4]
1656:13; 1667:24;
1668:2; 1689:4
**drugs** [2]
1668:24; 1673:9

– E –

**early** [4]
1683:7, 14; 1684:12,
18
**easier** [1]
1674:9
**easiest** [1]
1656:10
**easily** [1]
1676:21
**easy** [1]
1669:13
**edition** [1]
1670:1
**effect** [1]
1660:1
**effective** [1]
1688:25
**elaborate** [1]
1663:9
**elected** [1]
1680:21
**election** [1]
1691:7
**element** [2]
1676:9, 13

**elements** [1]
1676:16
**embarrassing** [1]
1687:12
**employee** [1]
1658:24
**employees** [1]
1658:17
**employment** [1]
1659:24
**encouraged** [1]
1686:5
**end** [5]
1679:22, 24; 1680:1; 1683:15
**endeavor** [1]
1671:25
**enter** [1]
1659:17
**entered** [1]
1659:16
**enterprise** [1]
1672:1
**entitled** [2]
1668:20; 1691:16
**entrepreneur** [1]
1683:12
**environment** [1]
1685:5
**equally** [1]
1679:5
**escape** [1]
1660:24
**essentially** [1]
1660:21
**establish** [1]
1678:2
**establishment** [1]
1659:18
**event** [1]
1655:23
**everybody** [1]
1663:19
**everyday** [2]
1659:25; 1683:21
**evidence** [16]
1659:8; 1661:3; 1662:6, 7, 10, 13, 17; 1663:25; 1665:4; 1666:13, 21, 24, 25; 1667:3; 1668:16; 1679:4
**exacting** [1]
1683:18
**example** [7]
1659:12; 1669:15, 22; 1670:16; 1672:12; 1674:11
**exhausted** [1]
1675:6
**expect** [2]
1673:8, 10
**expectation** [1]
1681:16
**explanation** [4]
1664:9, 10, 11
**exploitation** [1]
1675:17
**expressed** [1]
1689:11

– F –

**face** [1]
1677:21
**faces** [1]
1661:20
**facilitating** [1]
1690:20
**fact** [4]
1660:19; 1672:19; 1674:16; 1677:15
**facts** [4]
1659:6; 1664:5; 1665:7; 1679:25
**failed** [1]
1658:5
**failure** [1]
1677:20
**failures** [1]
1687:14
**fair** [2]
1660:16; 1684:9
**fairly** [1]
1657:5
**fall** [1]
1658:9
**familiar** [1]
1664:5
**families** [1]
1683:22
**family** [5]
1684:10; 1685:4, 5; 1687:12; 1690:21
**fashion** [1]
1656:24
**father** [3]
1684:14; 1685:11, 12
**fault** [4]
1662:16; 1687:17, 18; 1689:18
**fear** [1]
1680:5
**February** [1]
1666:14
**federal** [2]
1656:13, 17
**feel** [2]
1662:11; 1682:8
**feels** [1]
1676:23
**fellow** [1]
1664:15
**felonies** [1]
1675:19
**felt** [2]
1656:15; 1657:19
**field** [1]
1685:21
**fifth** [2]
1666:7, 9
**figure** [2]
1665:22; 1685:11
**Fike** [5]
1658:22; 1659:11, 16, 19, 21
**filed** [1]
1691:19
**filing** [1]
1692:7
**financially** [1]
1691:25
**find** [6]
1662:25; 1671:10, 18; 1676:2; 1680:16; 1685:12
**finding** [2]
1677:12; 1678:6
**findings** [1]
1678:13
**finds** [2]
1690:4, 9
**fine** [1]
1681:7
**finger** [1]
1672:18
**finish** [2]
1681:5; 1686:9
**firm** [3]
1657:3, 5, 22
**First** [3]
1658:18, 23; 1689:9
**first** [3]
1656:2; 1685:3, 4
**five** [4]
1665:1; 1666:5; 1673:20; 1689:1
**flavor** [1]
1660:25
**focused** [1]
1682:19
**follows** [1]
1688:19
**forbid** [1]
1672:17
**foreseeable** [3]
1667:20; 1672:3, 14
**forever** [1]
1660:8
**forget** [1]
1672:19
**found** [6]
1662:2, 21; 1664:13; 1667:23, 25; 1674:21
**four** [6]
1661:2, 5; 1666:5; 1671:13; 1679:2, 11
**fourth** [2]
1671:21; 1674:24
**Frankly** [1]
1675:8
**frankly** [5]
1658:5; 1668:18; 1671:10; 1682:1, 21
**friendly** [1]
1665:1
**front** [1]
1669:1
**full** [4]
1661:4; 1676:17; 1680:10; 1688:21
**fully** [1]
1680:20
**furtherance** [2]
1672:4; 1674:17

– G –

**game** [1]
1665:1
**garment** [1]
1659:19
**gave** [1]
1659:11
**generic** [1]
1664:22
**gentleman** [1]
1659:22
**getaway** [1]
1674:2
**gets** [1]
1681:15
**Gettysburg** [1]
1682:25
**gift** [1]
1684:22
**Gina** [1]
1658:22
**give** [5]
1662:21; 1663:3; 1681:6; 1682:24; 1686:21
**given** [3]
1683:7, 9, 10

**gives** [1] 1669:22
**giving** [1] 1668:21
**glad** [1] 1661:15
**glanced** [1] 1669:12
**goals** [1] 1683:17
**God** [11] 1660:17, 18, 20; 1672:17; 1684:16, 17, 19, 20; 1686:25; 1687:5; 1688:8
**gospel** [2] 1685:17, 20
**government** [23] 1656:1; 1661:4, 10; 1662:3, 9, 10, 14, 21, 23; 1663:7, 13; 1667:7, 22; 1672:23; 1676:19, 22; 1677:9, 13, 14; 1678:5; 1679:15; 1690:23; 1691:6
**government's** [9] 1659:7; 1661:2; 1662:6; 1664:16; 1668:21; 1676:18; 1677:24; 1678:1; 1690:16
**governs** [1] 1667:19
**granted** [1] 1691:3
**grasp** [1] 1685:18
**great** [1] 1688:1
**ground** [1] 1686:15
**growing** [1] 1685:2
**grown** [1] 1685:6
**guess** [5] 1659:12; 1663:2; 1665:25; 1684:20; 1685:8
**guidance** [1] 1685:12
**Guideline** [1] 1670:10
**guideline** [4] 1663:13; 1669:16, 17; 1672:25
**Guidelines** [1] 1670:7
**guidelines** [9] 1661:11; 1669:13; 1672:16; 1677:17; 1679:20, 21; 1680:1; 1683:16; 1686:22
**guilt** [2] 1663:17; 1664:17
**guilty** [11] 1661:1; 1662:3, 21, 25; 1664:14; 1667:15, 17, 23, 25; 1677:21; 1679:7
**gun** [1] 1656:13

**– H –**

**hands** [2] 1658:9; 1659:19
**hangs** [1] 1673:16
**Hannegan** [2] 1655:13; 1656:25
**happens** [1] 1656:17
**happy** [1] 1680:12
**hard** [3] 1680:16; 1683:24; 1685:21
**harmed** [2] 1656:18; 1676:6
**hasn't** [1] 1688:13
**hate** [1] 1670:14
**haven't** [1] 1671:11
**he's** [3] 1675:4; 1686:21; 1692:7
**healing** [2] 1687:5, 6
**health** [1] 1689:3
**hear** [8] 1656:1; 1659:20; 1661:15; 1670:14; 1677:5; 1680:12; 1682:2; 1684:2
**heard** [3] 1680:22; 1681:8; 1682:4
**hearing** [5] 1655:6; 1663:24; 1680:24; 1682:16, 17
**heinous** [1] 1659:9
**held** [3] 1662:12; 1667:21; 1674:6
**help** [5] 1657:8; 1666:23; 1674:13; 1675:16; 1685:11
**helps** [1] 1675:21
**hesitation** [2] 1660:10; 1690:13
**high** [2] 1683:15; 1684:13
**Hilliard** [12] 1660:17; 1664:4; 1667:12; 1674:24; 1678:25; 1679:1, 6, 9, 17; 1682:17; 1686:25; 1688:6
**Hilliard's** [2] 1681:1; 1687:18
**hire** [1] 1691:22
**hiring** [1] 1691:25
**hold** [2] 1657:6, 22
**holding** [1] 1685:7
**home** [2] 1684:15; 1688:17
**homicide** [1] 1672:25
**honestly** [4] 1687:4, 15, 20, 22
**Honor** [45] 1655:3, 4, 11, 17; 1656:3, 6; 1658:14; 1659:5; 1661:8, 16, 17, 22; 1662:7, 20; 1663:12; 1667:3, 24; 1668:8; 1669:4, 6, 10, 15; 1671:6, 22; 1673:2, 21; 1674:14; 1677:7; 1678:21, 22; 1679:8, 24; 1680:2; 1681:3, 7; 1682:3, 8; 1686:20; 1687:23, 24; 1689:16; 1690:23; 1691:12, 14; 1692:11
**Honor's** [1] 1682:4
**hope** [4] 1657:18; 1681:17; 1688:16, 17
**hopeful** [1] 1680:16
**house** [1] 1690:19
**human** [1] 1656:15
**hung** [3] 1663:7; 1666:1, 16
**hurt** [6] 1681:13, 14, 22; 1684:6; 1687:6
**hurts** [1] 1681:17

**– I –**

**I'd** [1] 1683:2
**ice** [1] 1655:21
**idea** [1] 1686:16
**identifiable** [1] 1656:15
**identified** [1] 1689:12
**illustrates** [1] 1673:25
**image** [2] 1664:16; 1677:25
**images** [1] 1664:13
**imagine** [2] 1672:20; 1676:21
**immediately** [1] 1689:25
**impact** [5] 1656:16; 1657:20; 1660:3; 1682:9; 1683:4
**important** [3] 1659:2; 1681:10, 20
**importantly** [1] 1682:17
**impose** [1] 1679:25
**imposes** [1] 1679:19
**inability** [1] 1690:17
**incapable** [1] 1691:25
**incarcerated** [3] 1684:13, 18; 1685:3
**incarceration** [2] 1661:21; 1688:23
**incident** [1] 1660:8
**include** [5] 1671:21; 1676:23; 1677:1; 1678:14, 16

**included** [1] 1661:5
**includes** [1] 1673:17
**inconvenienced** [1] 1657:14
**indicate** [1] 1678:22
**indicated** [3] 1658:19; 1680:10; 1682:6
**indictment** [3] 1677:22; 1690:24; 1691:7
**indigency** [1] 1691:24
**individuals** [1] 1679:18
**industry** [1] 1683:2
**innocuous** [2] 1659:15, 25
**inquiring** [1] 1659:23
**insist** [1] 1661:4
**inspirational** [1] 1680:17
**instance** [2] 1667:2; 1682:21
**instructed** [1] 1667:6
**intention** [1] 1687:6
**interesting** [1] 1675:18
**interrupt** [1] 1681:3
**interrupted** [2] 1677:8; 1681:9
**interviews** [1] 1660:7
**investigation** [4] 1655:24; 1681:1; 1683:9; 1688:20
**invite** [1] 1678:5
**involve** [1] 1676:15
**involved** [4] 1662:15, 20; 1678:3; 1683:1
**involvement** [1] 1683:11
**involves** [2] 1676:9, 12
**irrelevant** [5] 1668:11, 13, 14, 16, 17
**issue** [5] 1662:11, 19; 1678:19; 1689:16, 18
**issues** [8] 1657:22; 1661:24, 25; 1684:6; 1688:12, 13, 14, 16

– J –

**Jacobed** [1] 1655:7
**jail** [1] 1683:10
**January** [1] 1666:14
**jobs** [2] 1666:6; 1683:22
**jointly** [2] 1671:24; 1672:5
**Jonathan** [1] 1655:7
**Judge** [8] 1655:13, 25; 1656:25; 1663:1; 1666:12, 24; 1670:1; 1682:2
**judge** [4] 1657:7; 1673:19; 1681:24
**judgment** [1] 1688:18
**judicial** [1] 1678:5
**July** [1] 1691:15
**June** [2] 1664:3; 1665:7
**juror** [1] 1678:2
**jurors** [2] 1664:15
**jury** [18] 1661:1; 1662:2, 11, 16, 25; 1663:7; 1664:7, 13; 1665:9, 23, 25; 1666:16; 1667:2, 5, 6, 10; 1672:22; 1673:16
**jury's** [1] 1677:20
**Justice** [2] 1673:13, 18

– K –

**Kevin** [5] 1664:4; 1674:23; 1686:25; 1687:18; 1688:6
**Key** [1] 1664:3
**kids** [1] 1684:16
**killing** [1] 1672:20
**kinds** [2] 1657:3; 1675:19
**Kirby** [1] 1658:23
**knowledge** [1] 1658:15

– L –

**lack** [1] 1677:25
**last** [3] 1664:3; 1677:3; 1681:8
**late** [1] 1683:13
**law** [3] 1669:12; 1675:22; 1683:8
**lawyer** [2] 1684:5; 1691:25
**leaf** [1] 1676:1
**learned** [1] 1685:25
**leaving** [1] 1685:19
**legal** [1] 1668:19
**legitimate** [1] 1683:17
**length** [1] 1668:23
**let's** [1] 1672:19
**letter** [2] 1657:14; 1674:12
**level** [4] 1660:25; 1672:15, 19; 1674:15
**liable** [1] 1675:4
**lies** [1] 1675:13
**life** [7] 1659:13, 14; 1683:6, 7; 1687:20, 23; 1688:13
**light** [3] 1661:8, 9; 1688:5
**liking** [1] 1686:16
**lines** [2] 1658:12, 13
**lives** [2] 1660:9; 1683:21
**locate** [1] 1690:17
**locked** [1] 1687:16
**loss** [8] 1666:6, 11, 15; 1676:22, 23; 1677:2; 1678:15; 1689:8
**lot** [5] 1684:7; 1688:12, 14, 16
**love** [1] 1684:2
**low** [2] 1679:23; 1680:1
**LUNA** [12] 1655:4; 1656:3, 6; 1658:14; 1660:15; 1663:10; 1669:6, 10; 1690:23; 1691:4, 8, 12
**Luna** [13] 1655:8; 1657:11; 1658:13; 1661:14, 22; 1663:3, 6; 1664:6; 1669:9; 1679:1; 1690:22; 1691:11, 13

– M –

**maintain** [2] 1685:14; 1686:1
**major** [1] 1687:22
**male** [2] 1659:17, 18
**man** [1] 1685:6
**manager** [2] 1659:20, 23
**manipulate** [1] 1660:18
**manipulation** [2] 1660:19, 25
**Manual** [2] 1670:7, 10
**manual** [1] 1670:8
**March** [2] 1665:5; 1666:16
**Mariner** [2] 1658:18; 1689:9
**marked** [1] 1660:15

**market** [1]
1686:16
**marriage** [1]
1685:23
**married** [2]
1685:10, 24
**Marshals** [1]
1687:10
**Martin** [1]
1691:1
**Marty** [1]
1660:24
**math** [1]
1679:23
**matter** [10]
1655:6; 1656:23; 1661:19; 1666:25; 1678:25; 1679:19, 25; 1680:3, 4; 1686:22
**matters** [1]
1657:20
**May** [2]
1665:6; 1666:14
**mean** [4]
1656:12; 1671:9; 1681:7, 19
**means** [2]
1660:18; 1676:5
**meet** [1]
1664:1
**meetings** [1]
1660:7
**mental** [1]
1689:3
**mentioned** [2]
1684:12; 1686:21
**Mercantile** [2]
1658:24; 1689:9
**message** [1]
1659:1
**messed** [2]
1687:3, 4
**metropolitan** [1]
1690:20
**microphone** [1]
1686:11
**middle-class** [1]
1685:5
**mind** [5]
1658:3; 1678:2, 10; 1682:20; 1685:23
**mine** [1]
1687:19
**minimum** [2]
1683:16; 1690:1
**minutes** [1]
1683:3
**missed** [1]
1687:22
**misunderstand** [1]
1665:16
**molested** [1]
1687:24
**moment** [6]
1656:4; 1659:21; 1660:13; 1672:20; 1681:16; 1682:24
**Monday** [1]
1655:18
**monetary** [1]
1660:21
**money** [1]
1686:14
**month** [2]
1685:24; 1690:1
**monthly** [1]
1690:1
**months** [7]
1679:10, 11, 22, 23; 1687:15; 1688:23
**morning** [4]
1655:14; 1656:7; 1657:6, 15
**mother's** [1]
1684:21
**motion** [2]
1663:13; 1691:3
**motions** [1]
1680:24
**motive** [2]
1688:6
**move** [1]
1690:24
**MS** [31]
1663:12, 21, 23; 1664:21; 1665:3, 14; 1666:2, 17, 20; 1667:1, 13, 18; 1668:7, 12; 1669:4, 15, 19, 22; 1670:3, 21; 1671:5, 8, 22; 1673:2, 21, 24; 1674:5, 8, 11, 14, 21
**Ms** [12]
1657:17; 1658:22; 1659:11, 16, 19, 21; 1660:6; 1663:10, 11; 1672:23; 1675:21; 1678:25
**murder** [6]
1672:13, 14; 1673:15, 17, 19; 1674:16
**music** [4]
1683:1; 1685:18, 20; 1686:14
**myself** [5]
1685:2; 1686:1; 1687:14, 16; 1688:10

**– N –**

**Nacoe** [2]
1655:5; 1690:25
**nature** [2]
1679:14; 1683:13
**needs** [1]
1657:4
**night** [1]
1687:5
**nine** [1]
1687:15
**Note** [7]
1669:16, 19; 1670:2, 3; 1671:18; 1673:22, 24
**note** [2]
1667:19; 1669:2
**notice** [2]
1691:19; 1692:7
**Notwithstanding** [2]
1675:22; 1677:25
**notwithstanding** [1]
1680:9
**November** [1]
1669:17
**Number** [14]
1655:5; 1665:19, 20; 1667:8, 9; 1669:19; 1670:2, 3; 1673:24; 1690:24

**– O –**

**observed** [1]
1659:17
**obvious** [3]
1664:9, 10, 11
**Obviously** [1]
1671:19
**obviously** [4]
1657:25; 1661:17; 1676:15; 1679:10
**occurred** [2]
1666:16; 1672:6
**occurs** [1]
1675:8
**oddity** [1]
1677:23
**offense** [11]
1656:16, 18; 1670:25; 1671:2; 1672:6, 7, 9; 1675:23; 1676:7, 8, 12
**offer** [1]
1659:3
**Office** [2]
1673:12; 1691:2
**office** [1]
1658:5
**officer** [3]
1671:19, 20; 1690:2
**officer's** [1]
1689:8
**oftentimes** [1]
1667:25
**oh** [1]
1682:2
**Okay** [6]
1664:18; 1669:21; 1670:22; 1675:6; 1678:18; 1681:5
**okay** [2]
1666:3; 1675:25
**old** [1]
1687:25
**omissions** [1]
1672:4
**one's** [2]
1687:17, 18
**ongoing** [1]
1656:23
**open** [2]
1658:20; 1672:21
**opportunities** [1]
1659:24
**opportunity** [1]
1685:16
**opposed** [2]
1662:19, 25
**opposing** [1]
1656:25
**opted** [1]
1662:23
**options** [1]
1662:22
**order** [12]
1661:6, 7; 1671:12; 1677:2, 10, 19; 1678:8, 11, 16; 1689:14; 1690:4; 1691:4
**ordered** [1]
1676:7
**ordering** [2]
1678:7; 1689:12
**orders** [1]
1689:6
**ought** [1]
1675:10
**overtones** [1]
1660:16

**overwhelming** [1] *1666:21*

**– P –**

**Page** [2] *1669:18, 19*
**page** [7] *1669:16; 1670:4; 1673:25; 1674:8, 11, 19, 22*
**pagination** [1] *1670:10*
**paid** [2] *1689:25; 1690:1*
**pain** [1] *1688:4*
**parents** [1] *1685:17*
**parse** [1] *1664:19*
**part** [7] *1660:21; 1662:16; 1665:10; 1667:11; 1670:17; 1679:10; 1687:23*
**participated** [2] *1674:25; 1679:2*
**partly** [2] *1657:1, 3*
**pass** [1] *1658:21*
**passed** [1] *1658:22*
**pastor** [1] *1684:14*
**Patapsco** [2] *1658:17; 1689:8*
**pattern** [2] *1676:10, 14*
**Pause** [4] *1656:5; 1660:14; 1670:12; 1675:14*
**pay** [1] *1678:12*
**payment** [1] *1690:15*
**payments** [1] *1690:6*
**penalty** [2] *1668:8, 11*
**people** [9] *1656:18; 1657:12; 1660:19; 1683:19, 21; 1686:15; 1687:6; 1688:2*
**perfect** [1] *1685:23*
**period** [2] *1661:20; 1689:5*
**permit** [1] *1690:2*
**person** [3] *1657:24; 1660:1; 1676:5*
**personal** [1] *1681:2*
**persons** [1] *1660:11*
**persuade** [1] *1671:12*
**persuaded** [2] *1664:15; 1677:1*
**Place** [3] *1683:12; 1686:17, 18*
**place** [1] *1686:7*
**placed** [1] *1689:2*
**plan** [1] *1671:25*
**play** [1] *1658:4*
**players** [1] *1665:2*
**plays** [1] *1684:24*
**plea** [1] *1670:17*
**plead** [1] *1679:7*
**Please** [1] *1665:16*
**please** [2] *1669:2; 1685:19*
**pleased** [1] *1655:14*
**point** [2] *1680:4; 1682:5*
**poker** [1] *1665:1*
**portion** [1] *1690:7*
**posed** [1] *1666:18*
**position** [3] *1661:2; 1676:19; 1690:15*
**positive** [1] *1680:16*
**possibilities** [1] *1675:7*
**postponement** [1] *1656:21*
**potential** [3] *1682:23; 1684:14, 22*
**power** [3] *1678:8, 17*
**praise** [1] *1660:20*
**pray** [1] *1687:5*
**precisely** [1] *1673:21*
**preparation** [1] *1672:7*
**prepared** [4] *1658:3; 1673:13; 1691:4, 6*
**preponderance** [5] *1661:4; 1663:25; 1666:13, 24; 1668:15*
**present** [8] *1662:4, 10, 15, 18; 1671:14; 1679:10; 1684:15, 21*
**presented** [6] *1662:7, 8, 9; 1664:3; 1679:4; 1683:11*
**presentence** [4] *1655:24; 1680:25; 1683:9; 1688:20*
**presenting** [1] *1662:17*
**pretty** [4] *1659:7; 1666:21; 1686:4, 13*
**Prisons** [2] *1688:24; 1690:18*
**probation** [4] *1671:19, 20; 1689:7; 1690:2*
**problem** [2] *1657:8; 1675:8*
**proceed** [3] *1655:24; 1662:22, 24*
**PROCEEDING** [1] *1655:1*
**proceeding** [5] *1656:5; 1660:14; 1670:12; 1675:14; 1692:13*
**proceedings** [1] *1660:24*
**proceeds** [4] *1690:7, 11, 12, 17*
**program** [1] *1689:3*
**progress** [1] *1685:15*
**promote** [1] *1660:21*
**pronounces** [1] *1684:1*
**proof** [6] *1663:24; 1664:16; 1668:14, 15; 1677:24; 1678:1*
**properly** [1] *1690:11*
**property** [1] *1690:11*
**prosecutor** [2] *1684:10; 1687:10*
**protecting** [1] *1683:17*
**proved** [1] *1667:7*
**provide** [1] *1672:11*
**provides** [2] *1670:23; 1674:1*
**providing** [2] *1683:22*
**provision** [2] *1675:11, 22*
**provisions** [1] *1675:19*
**proximately** [1] *1676:5*
**psychiatrist** [1] *1688:15*
**punishment** [2] *1668:22; 1683:18*
**purchase** [1] *1659:17*
**pure** [1] *1688:7*
**purpose** [1] *1690:20*
**purposes** [3] *1668:23; 1676:4; 1691:23*

**– Q –**

**quantity** [1] *1668:24*
**quantum** [1] *1668:16*
**question** [10] *1663:2, 18; 1666:17; 1668:17, 18, 19, 25; 1675:10; 1677:14*
**questions** [1] *1661:12*
**quick** [1] *1669:13*
**quickly** [2] *1676:1, 11*

**– R –**

**raise** [1] *1686:14*

**range** [1]
1683:16
**RAVENELL** [18]
1655:11, 17, 19, 25; 1661:16; 1663:5; 1670:1, 4, 8, 11; 1677:7, 11; 1678:21; 1681:3, 7; 1682:3; 1689:16; 1691:14
**Ravenell** [13]
1655:10; 1661:15; 1663:3; 1669:24; 1677:5; 1678:20; 1680:8, 9; 1682:13; 1691:20, 22; 1692:6
**Ravenell's** [1]
1656:20
**Ray** [2]
1655:5; 1690:25
**reach** [4]
1664:8; 1665:9; 1672:22; 1677:20
**read** [2]
1670:21; 1676:11
**reading** [2]
1674:7; 1682:15
**real** [2]
1656:14, 18
**realize** [1]
1656:22
**reason** [5]
1678:7; 1682:10; 1687:2, 3; 1690:5
**reasonable** [5]
1664:17; 1667:7, 10; 1678:2, 3
**reasonably** [1]
1672:3
**reasons** [3]
1656:9; 1676:22; 1689:11
**recently** [1]
1658:25
**recipes** [1]
1686:5
**recognize** [1]
1676:17
**recommend** [1]
1690:18
**recommendation** [1]
1679:14
**recommends** [1]
1689:2
**record** [6]
1678:18; 1682:7; 1684:11; 1685:16; 1686:24; 1688:9
**recovered** [2]
1689:20; 1690:8
**red** [1]
1669:17
**redemption** [1]
1682:21
**refer** [2]
1669:5; 1674:8
**Referring** [1]
1675:15
**refuge** [2]
1684:19, 23
**regard** [1]
1678:13
**regarding** [2]
1661:25; 1662:8
**regards** [1]
1680:18
**regret** [1]
1657:11
**rehabilitate** [2]
1685:1, 2
**rehabilitated** [1]
1685:7
**rehabilitation** [2]
1682:22; 1683:10
**rehabilitative** [1]
1682:23
**reject** [1]
1676:18
**relate** [1]
1659:10
**relates** [1]
1675:17
**relating** [1]
1689:3
**relationship** [1]
1681:2
**release** [5]
1688:25; 1689:4, 5; 1690:15
**relevant** [15]
1663:14; 1664:19, 20; 1665:10, 12, 17; 1666:4; 1667:19; 1668:25; 1671:17; 1672:10; 1673:19; 1675:3, 9; 1676:24
**religion** [4]
1660:18, 20; 1661:24, 25
**religious** [5]
1660:16; 1661:23; 1662:8, 11, 15
**relying** [1]
1670:20
**remain** [2]
1680:21; 1681:12
**remember** [1]
1660:23
**rent** [1]
1686:7
**report** [4]
1655:24; 1681:1; 1683:9; 1688:20
**reported** [1]
1679:9
**represent** [3]
1691:23; 1692:2, 8
**representative** [1]
1658:16
**require** [1]
1689:4
**required** [1]
1676:12
**reschedule** [1]
1656:11
**rescheduling** [2]
1656:21; 1657:15
**respect** [6]
1656:7; 1657:3; 1659:5; 1664:2; 1680:20; 1681:20
**respectfully** [1]
1669:4
**respond** [1]
1663:4
**responsibility** [3]
1664:2; 1672:9; 1674:24
**responsibly** [1]
1656:21
**restitution** [27]
1661:6; 1662:19; 1663:1, 8; 1668:3, 9; 1671:13, 21; 1672:20; 1675:4, 10, 11, 18; 1676:7; 1677:19; 1678:7, 9, 16; 1689:6, 12, 16, 18, 22, 25; 1690:4, 6, 16
**restitutionary** [2]
1677:2; 1678:11
**result** [3]
1660:2; 1676:6; 1690:16
**retry** [4]
1665:25; 1673:3, 4; 1676:20
**review** [4]
1659:6; 1677:13; 1678:5, 19
**reviewed** [1]
1655:23
**Right** [3]
1670:11; 1671:8; 1689:21
**right** [13]
1656:1; 1662:5; 1664:24; 1667:18; 1677:8; 1679:23; 1680:11, 15, 20; 1681:20; 1687:4; 1688:11; 1691:18
**risk** [1]
1681:24
**rob** [1]
1686:25
**robber** [1]
1678:1
**robberies** [17]
1661:5; 1665:10, 23; 1666:5, 10, 13, 15; 1667:12; 1670:19; 1672:24, 25; 1673:15, 20; 1674:23; 1679:2, 18; 1690:7
**Robbery** [9]
1664:21; 1665:18, 19; 1667:8, 9
**robbery** [34]
1659:13; 1660:2; 1664:2, 23; 1665:5, 6, 7, 12, 18; 1666:4, 7, 8, 9, 11, 16; 1670:17; 1671:21; 1672:21; 1673:9; 1674:3, 20, 22, 25; 1675:1, 5, 25; 1676:15; 1677:3; 1678:4, 15; 1690:17
**robs** [1]
1665:1
**RODRIGUEZ-COSS** [31]
1663:12, 21, 23; 1664:21; 1665:3, 14; 1666:2, 17, 20; 1667:1, 13, 18; 1668:7, 12; 1669:4, 15, 19, 22; 1670:3, 21; 1671:5, 8, 22; 1673:2, 21, 24; 1674:5, 8, 11, 14, 21
**Rodriguez-Coss** [8]
1655:7; 1657:17; 1660:6; 1663:10, 11; 1672:23; 1675:21; 1678:25
**run** [1]
1688:2
**running** [3]
1687:12, 14

**– S –**

**sad** [1] 1683:14
**sadly** [1] 1660:15
**Safe** [2] 1658:24; 1689:9
**sake** [1] 1665:21
**sale** [1] 1668:5
**sanity** [1] 1686:1
**sat** [2] 1680:22, 23
**saying** [8] 1666:20; 1674:15; 1682:2, 14; 1684:25; 1687:2, 3; 1688:5
**scared** [1] 1687:11
**scenario** [1] 1672:20
**schedule** [1] 1656:7
**schedules** [2] 1657:4, 22
**scheduling** [1] 1657:6
**scheme** [9] 1671:25; 1674:17, 18, 19, 21, 23; 1676:9, 13; 1686:19
**school** [1] 1684:13
**screening** [1] 1689:4
**seat** [2] 1686:8, 9
**section** [4] 1667:19; 1671:22; 1676:4, 11
**sections** [1] 1677:18
**secular** [1] 1685:20
**seek** [3] 1656:21; 1677:13; 1678:5
**seeking** [2] 1661:10; 1672:24
**sense** [4] 1656:14; 1664:7; 1677:14; 1686:1
**sentence** [13] 1661:10; 1663:16; 1668:23; 1670:15; 1679:9, 10, 19, 20, 22; 1680:1; 1683:15; 1684:1; 1691:14
**sentenced** [3] 1661:18; 1688:19, 22
**Sentencing** [2] 1670:6, 9
**sentencing** [18] 1655:6; 1656:11, 22; 1657:15; 1661:3, 24; 1663:13, 15, 24; 1672:24; 1675:2, 23; 1679:8; 1680:17, 21; 1681:13; 1682:9; 1683:17
**sentiment** [1] 1660:8
**separate** [2] 1666:4; 1671:1
**series** [2] 1674:23; 1677:4
**serious** [4] 1659:9; 1668:8, 10; 1688:15
**service** [1] 1683:23
**seven** [1] 1665:23
**severity** [1] 1668:17
**sexual** [1] 1675:17
**share** [2] 1660:4, 7
**sharpen** [1] 1686:5
**She's** [1] 1670:6
**Shekinah's** [3] 1683:11; 1686:17, 18
**show** [1] 1676:12
**showing** [1] 1691:25
**shows** [1] 1665:5
**significant** [5] 1661:20; 1679:20; 1690:6, 7, 16
**significantly** [1] 1675:9
**silent** [2] 1680:21; 1681:12
**simplification** [1] 1665:5
**sincerely** [1] 1657:11
**sing** [1] 1684:22
**singer** [1] 1683:1
**single** [2] 1674:20, 22
**sir** [5] 1661:15; 1680:14; 1684:3; 1692:4, 5
**sitting** [1] 1678:24
**situation** [9] 1658:6; 1659:15, 25; 1664:25; 1665:4; 1667:24; 1669:9; 1676:21; 1687:11
**situations** [1] 1660:11
**six** [2] 1673:15; 1684:16
**Slow** [1] 1674:4
**snatched** [1] 1685:5
**snow** [1] 1655:21
**somehow** [1] 1666:4
**someone** [1] 1690:10
**somewhat** [2] 1659:6; 1685:24
**songs** [1] 1684:23
**sort** [4] 1656:11, 12; 1659:11; 1660:22
**sources** [1] 1679:12
**space** [1] 1685:14
**Speak** [1] 1686:11
**speak** [13] 1658:3; 1659:20; 1681:12, 15, 16, 19, 20; 1682:1, 6; 1684:1, 2, 3, 5
**speaker** [1] 1682:25
**speaking** [5] 1679:12; 1681:17, 21, 22
**speaks** [2] 1660:3; 1682:11
**special** [3] 1669:9; 1689:15, 24
**specific** [5] 1661:12; 1669:2; 1675:18, 19; 1678:6
**speechless** [2] 1680:19
**spelled** [1] 1683:8
**spending** [2] 1668:19; 1682:14
**spent** [2] 1683:9; 1691:17
**spiritual** [2] 1687:3, 19
**spoke** [1] 1655:13
**spoken** [2] 1658:18; 1660:6
**spring** [1] 1683:14
**stability** [1] 1685:25
**stage** [1] 1675:2
**stand** [3] 1661:18; 1674:24; 1682:24
**standard** [2] 1663:24; 1664:1
**stands** [1] 1692:12
**started** [1] 1686:15
**state** [2] 1656:17; 1678:18
**stated** [1] 1659:19
**statement** [5] 1657:25; 1658:1, 20; 1659:3; 1683:19
**statements** [1] 1657:13
**States** [4] 1655:5, 7; 1690:25; 1691:1
**states** [3] 1663:14; 1667:19; 1673:22
**step** [1] 1669:6
**stick** [1] 1666:15
**store** [2] 1659:16, 22
**straight** [2] 1684:11; 1686:24
**straightaway** [1] 1664:6
**strive** [1] 1683:24
**subject** [2] 1677:6, 7

USCA4 Appeal: 17-347 Doc: 4 SEALED Filed: 08/22/2017 Pg: 53 of 54
Appeal: 16-711 Doc: 9 Filed: 05/17/2016 Pg: 54 of 55

**submission** [1] 1691:24
**submit** [4] 1661:13; 1663:23, 25; 1668:7
**Subsection** [1] 1670:23
**subsection** [2] 1671:23; 1675:24
**substance** [1] 1685:7
**sudden** [1] 1686:3
**suggest** [2] 1671:20; 1672:22
**suggesting** [1] 1665:15
**Supervised** [1] 1688:25
**supervised** [2] 1689:3, 5
**Suppose** [2] 1665:21; 1666:5
**suppose** [1] 1665:23
**surely** [1] 1666:8
**surgery** [1] 1658:25
**surprised** [2] 1664:7; 1683:2
**system** [2] 1657:9; 1684:25

– T –

**talk** [1] 1664:18
**talked** [1] 1689:18
**talking** [7] 1668:3, 4, 5, 10; 1670:6; 1673:11; 1683:7
**talks** [1] 1674:5
**tape** [3] 1658:4, 8
**tapes** [1] 1658:10
**taught** [1] 1684:16
**technically-legal** [1] 1671:16
**teller** [3] 1666:6, 9, 14
**telling** [2] 1681:4; 1682:8
**ten** [1] 1691:20
**term** [1] 1676:4
**terms** [1] 1668:23
**terribly** [1] 1683:2
**terrified** [1] 1659:21
**terrorizing** [1] 1683:21
**testified** [1] 1674:25
**testify** [2] 1678:25; 1679:7
**testimony** [2] 1664:4; 1681:1
**Thank** [11] 1655:9; 1661:14, 16; 1669:10; 1678:21; 1680:8; 1688:11; 1691:12, 13; 1692:10, 11
**Theft** [1] 1664:22
**theft** [1] 1664:20
**There's** [2] 1658:16; 1663:18
**there's** [8] 1655:20; 1662:15; 1665:23; 1667:16; 1675:20; 1681:24; 1684:7, 8
**they're** [1] 1688:3
**thinking** [2] 1685:10; 1687:11
**thoughts** [4] 1658:21; 1659:10; 1660:4; 1681:5
**three** [5] 1661:2; 1664:13; 1672:24, 25; 1679:3
**tie** [1] 1668:25
**Tiffany** [1] 1687:18
**timely** [1] 1656:24
**Title** [2] 1668:23; 1677:18
**tone** [5] 1660:22; 1661:23; 1662:8, 11, 15
**total** [2] 1689:6, 22
**totally** [1] 1668:11
**traceable** [1] 1690:12
**trauma** [1] 1688:13
**treated** [1] 1670:25
**treating** [1] 1689:21
**treatment** [2] 1689:2, 4
**trial** [11] 1660:22; 1661:22, 25; 1662:4, 5, 7; 1680:6, 24; 1681:2; 1682:18; 1684:8
**truck** [1] 1684:15
**true** [4] 1664:10; 1667:5; 1683:13; 1684:8
**Trust** [2] 1664:3; 1689:9
**trust** [1] 1684:16
**truth** [1] 1657:2
**type** [1] 1659:18

– U –

**U.S.** [1] 1673:11
**ultimately** [1] 1686:12
**unable** [2] 1664:8; 1665:9
**unanimous** [4] 1664:8; 1672:22; 1677:20, 21
**unarmed** [1] 1676:15
**underlie** [1] 1657:20
**understand** [20] 1655:12, 20; 1657:18; 1658:4, 9; 1662:24; 1669:8, 9; 1675:2; 1676:20, 25; 1677:11; 1679:6, 21; 1680:10, 13; 1681:11, 21; 1692:3
**Understood** [1] 1665:3
**understood** [1] 1679:12
**undertaken** [4] 1671:24; 1672:1, 5, 13
**underwent** [1] 1658:25
**unfair** [1] 1682:10
**unfortunate** [1] 1660:22
**United** [4] 1655:4, 7; 1690:25; 1691:1
**unmitigated** [1] 1683:6
**useful** [1] 1680:16
**utterly** [1] 1680:19

– V –

**vast** [1] 1690:17
**vault** [3] 1666:7, 11, 15
**veneer** [1] 1683:10
**verdict** [7] 1664:8; 1665:9; 1667:15, 17; 1672:22; 1677:21, 22
**verdicts** [1] 1661:1
**victim** [5] 1658:15; 1660:2, 3; 1676:2, 5
**victim-impact** [1] 1657:25
**victims** [5] 1656:14; 1657:4; 1658:7; 1661:9; 1687:6
**videotapes** [2] 1658:2; 1664:12
**view** [1] 1681:11
**violent** [1] 1659:9
**Virginia** [1] 1658:23
**visitation** [1] 1690:21
**volumes** [1] 1660:3

– W –

**walks** [1] 1665:1
**wanted** [11] 1658:11, 12, 15, 24; 1659:3, 4, 20;

USCA4 Appeal: 17-347 Doc: 4 Filed: 08/22/2017 Pg: 54 of 54
Appeal: 16-7111 Doc: 9 SEALED Filed: 05/17/2016 Pg: 55 of 55

1681:8; 1684:5; 1687:8; 1688:9
**wants** [2] 1677:13; 1682:2
**We're** [1] 1668:3
**we're** [3] 1666:20; 1668:5, 10
**we've** [1] 1675:6
**weather** [1] 1657:2
**week** [4] 1655:13; 1656:22; 1657:2, 14
**weekends** [1] 1686:6
**weeks** [2] 1678:24; 1680:24
**weight** [1] 1666:25
**welcome** [1] 1658:1
**whatsoever** [1] 1682:23
**wife** [2] 1685:22, 23
**willing** [1] 1676:23
**win** [1] 1680:7
**winter** [1] 1683:14
**wish** [4] 1658:6; 1680:4; 1681:4; 1683:25
**wished** [4] 1657:24; 1658:2; 1662:22; 1682:6
**wishes** [2] 1663:7; 1684:4
**witness** [1] 1687:5
**witnesses** [7] 1658:16, 19, 22; 1659:8; 1660:5; 1682:18
**womb** [1] 1684:21
**word** [1] 1660:18
**words** [2] 1664:25; 1681:14
**work** [2] 1657:9; 1683:24
**working** [2] 1657:19; 1685:13
**world** [5] 1656:11; 1683:11, 19; 1685:6, 13
**wouldn't** [3] 1673:3, 4; 1674:15
**wrestled** [1] 1687:16
**writing** [3] 1684:23, 24; 1691:19
**written** [1] 1658:1
**wrong** [5] 1681:23, 24, 25; 1685:17; 1687:3

– Y –

**year** [1] 1664:3
**years** [5] 1679:11, 23, 24; 1687:24; 1689:1
**you'd** [1] 1665:25
**You've** [1] 1688:12
**you've** [3] 1666:11; 1672:18; 1688:13
**young** [1] 1683:12